# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.1:24-CV-11850-IT

| | |
|---|---|
| DESIGN MARK INDUSTRIES, LLC<br>        Plaintiff<br><br>v.<br><br>UNBEATEN PATH INTERNATIONAL LTD,<br>and MILTON C. HABECK,<br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND/OR TEMPORARY RESTRAINING ORDER

### I.    Introduction

Pursuant to Fed. R. Civ. P. 65, Plaintiff, Design Mark Industries, LLC (the "Plaintiff" or "Design Mark"), hereby respectfully submits this Memorandum of Law in Support of its Emergency Motion for Preliminary Injunction and/or Temporary Restraining Order prohibiting Defendants, Unbeaten Path International Ltd. ("Unbeaten Path") and Milton C. Habeck ("Habeck") (collectively "Defendants"), from taking any further actions through the Institute of Christian Conciliation (the "ICC").

Design Mark brings this action for damages and injunctive relief for violation of its rights arising under Mass. Gen. Laws c. 93A, fraud/deceit, and unconscionable contract clauses. The Plaintiff has herewith filed a *Verified Complaint for Declaratory and Injunctive Relief* to enjoin the Defendants from continuing to take actions in furtherance of their fraudulent penalty fee billing scheme by arbitrating this matter with the ICC, who Defendants have used for decades and who has been favorable to the Defendants. (Compl. ¶¶ 64 & 66, Ex. V). Arbitration through the ICC must be removed on the grounds that there are justifiable doubts as to their impartiality, in that the

ICC has demonstrated apparent bias. Arbitration through the ICC will be a violation of due process as it is not based on rules of law as understood in arbitration procedures, but based on the Holy Scriptures (Holy Bible) and, according to the ICC arbitration clause, does not permit appeal once a decision is rendered by the ICC. (Compl. 59, Ex. R). Design Mark will be irreparably harmed with regards to the amount Design Mark "owes" to Defendants based on the Defendants' fraudulent penalty fee billing scheme, for which arbitration through ICC will guarantee the Defendants are rewarded for their fraudulent practices. Arbitration through the ICC which, if permitted to go forward, cannot be undone or otherwise remedied, as the ICC arbitration clause under the Professional Service Agreement ("PSA") and Lickety-Split ® Software License Agreement ("SLA") state that an ICC decision cannot be appealed. (Compl. Ex. A & D). As a result of Defendants' improper and unlawful conduct, Plaintiff seeks to prevent Defendants from continuing to compound their fraudulent penalty fee billing scheme against Design Mark and prevent Defendants from arbitrating the matter through the ICC and running up tremendous costs, as Habeck has stated that he has already paid $21,000 to the ICC for the administration of the arbitration process. (See Exhibit 1).

In summary, the Defendants' billing practices are illegal and Design Mark does not owe any money to the Defendants, as Design Mark had paid the Defendants in full. Therefore, Plaintiff is entitled to injunctive relief to prevent Defendants from enforcing their fraudulent billing scheme and arbitrating the matter through ICC, a biased and an un-accredited mediation/arbitration group with un-certified arbitrators and mediators that Habeck has used to perfect his fraudulent billing practices. The Plaintiff does not recognize the ICC as a legitimate alternative dispute resolution (ADR) and continues to refuse to arbitrate the matter though the ICC. Plaintiff is likely to succeed on the merits of its claim. Without injunctive relief, Design Mark will experience immediate and

irreparable harm to its business and reputation, accrue additional illegal and fraudulent compounded penalty fees, and violations of Design Mark' due process rights. The proposed injunction is narrowly tailored to prevent undue harm to the Plaintiff and is consistent with established case law.

This Court also finds, in the absence of adversarial presentation, that it has personal jurisdiction over Defendants because Defendants directly target their business activities toward consumers in the United States, including Massachusetts. Specifically, Plaintiff has provided a basis to conclude that Defendants have targeted sales and services to Massachusetts businesses by setting up a website and operating IT Services and IT Programs that target United States consumers, including Massachusetts, and have sold products and services to Plaintiff whose principal place of business is located in New Bedford, Massachusetts. Additionally, this Court has personal jurisdiction over the Defendants pursuant to the Massachusetts long-arm statute, Mass. Gen. Laws c. 223A, § 3, and the U.S. and Massachusetts Constitutions, because, as set forth in the Complaint, Defendants have maintained continuous and systematic contacts with Massachusetts: Defendants operate and conduct business in Massachusetts.

## II.    Facts

For a complete statement of the relevant facts, the Court is respectfully referred to the Complaint and accompanying exhibits.

## III.    Argument

### A. Standard for Review for Preliminary Injunction

Rule 65 of the Federal Rules of Civil Procedure governs the procedures courts use in deciding preliminary injunctions and temporary restraining orders. To the extent Plaintiff seeks an ex parte restraining order, such relief may be sought pursuant to Fed. R. Civ. P. 65(b). The

Court is mindful of the purpose of a temporary restraining order which is to "preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Prop., Inc., 48 F.3d 618, 620 (1st Cir. 1995). A preliminary injunction is also appropriate to preserve the status quo pending the outcome of litigation. Petricca Constr. Co. v. Commonwealth, 37 Mass. App. Ct. 392, 399 (1994). The same four-factor test for preliminary injunctions also has been extended to temporary restraining orders. Levesque v. State of Maine, 587 F.2d 78, 80 (1st Cir. 1976); see Butler v. Maine Sup. Jud. Ct., 758 F. Supp. 37, 38 (D. Me. 1991) (applying criteria). To secure a preliminary injunction, a plaintiff must show: "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003); see also Lanier Prof'l Servs., Inc. v. Ricci, 192 F.3d 1, 3 (1st Cir. 1999) ("We apply the federal preliminary injunction standard in a diversity case, at least where the parties have not suggested that state law supplies meaningfully different criteria."). The first factor, likelihood of success, "weighs most heavily in the preliminary injunction analysis." CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 55 (1st Cir. 2020).

Plaintiff requests that this Court enter injunctive relief to prevent the Defendants from continuing to arbitrate this matter through the ICC and prevent the ICC from making any further decisions and/or orders. Design Mark seeks these orders because it has no other alternative under the circumstances as Habeck has initiated arbitration through the ICC, an illegitimate ADR service, without Design Marks consent and the ICC has scheduled Preliminary Hearing on July 24, 2024, despite both the ICC and Habeck receiving an email copy of Design Marks *Verified Complaint for Declaratory and Injunctive Relief* on July 19, 2024. On various emails, Annette Friesen, Certified

Christian Conciliator, stated that the ICC would halt its mediation/arbitration proceedings once a copy of complaint filed in civil court was provided to her and provided ICC received the same before June 30, 2024, a completely arbitrary date. (See Exhibits 2-4). However, in a response to Design Mark's July 19, 2024 email to the ICC and Habeck regarding the filed Complaint, Annette Friesen notified that the Arbitrator stated that the Preliminary Hearing would still occur. (See Exhibit 5). Design Mark constantly stated to ICC and Habeck its refusal to arbitrate/mediate through the ICC and would file suit in court. Ignoring this, Habeck initiated arbitration/mediation with the ICC and paid the required ICC administrative fees and the ICC commenced mediation/arbitration without Plaintiff's consent. The ICC further raises questions about its process and proceedings of arbitration as Habeck has stated that he has paid the ICC $21,000 in arbitration fees, to date, even though the ICC has only recently initiated the beginning steps of its arbitration process. (See Exhibit 1). Furthermore, ICC Rule 13. (E) states that during arbitration, attorneys may represent and speak for their clients, however, attorneys will be expected to respect the conciliatory nature of the process and avoid unnecessary advocacy. (See Exhibit 1). Habeck has requested that, under this rule, the CEO and/or the CFO of Design Mark attend the hearing in an attempt to disallow Design Mark's counsel to speak on Design Mark's behalf. This ICC rule is a violation of due process. On July 24, 2024, the ICC also sent an Administrator Summary of Preliminary Notice prior to the Preliminary Hearing. (See Exhibit 6).

Allowing Defendants and the ICC to continue to arbitrate the matter at issue will have long-term, irreparable effects on the Plaintiff, including the accumulation of additional attorney's fees and compounded penalty fees and threatens the loss of business and customers. Design Mark will be without any adequate legal remedy if the case is arbitrated through the ICC. A preliminary

injunction must be issued to prevent the Defendants from continuing to arbitrate the matter though the ICC pending a final judgment on the merits of the case by this Court.

### B. Design Mark is Likely to Succeed on the Merits.

#### i. Defendants are in violation of Mass. Gen. Laws c. 93A, unfair business practices.

The Massachusetts courts have made it clear that "the definition of an actionable 'unfair or deceptive act or practice' goes far beyond the scope of the common law action for fraud or deceit." Massachusetts v. Hale, 618 F.2d 143, 146-47 (1st Cir. 1980) quoting Slaney v. Westwood Auto, Inc., 366 Mass. 688, 703-04 (1975). Of critical importance to the present controversy is the fact that under Chapter 93A it is unnecessary for a prevailing plaintiff to establish that the defendant knew his allegedly deceptive representations were false; similarly, a Chapter 93A plaintiff need not prove his actual reliance upon defendant's representations. Id. The Defendants' committed unfair and/or deceptive acts or practices in violation of Mass. Gen. Laws. C. 93A when the Defendants accepted payment from the Plaintiff and knowingly continued to enforce penalty and interest fees against Plaintiff, claiming Plaintiff failed to pay Defendant for its services on time and then initiated arbitration through the ICC to perfect the unfair and illegal billing practices.

Massachusetts does not recognize accelerated formulas or usurious interest rates. False billing involves the issuance of invoices that contain fabricated or inflated charges designed to defraud the customer. See Keystone Freight Corp. v. Bartlett Consol., Inc., 77 Mass. App. Ct. 304, 316, 930 N.E.2d 744 (2010) (recognizing "billing misconduct" as basis for claims of deceit, negligent misrepresentation, and violation of G. L. c. 93A, but holding they were compulsory counterclaims in prior action). It is well-established that a provision for liquidated damages owing upon a contract's breach will be enforced "where actual damages are difficult to ascertain and

where the sum agreed upon by the parties at the time of execution of the contract represents a reasonable estimate of the actual damages." Kelly v. Marx, 428 Mass. 877, 880 (1999), quoting from A-Z Servicenter, Inc. v. Segall, 334 Mass. 672, 675 (1956).  "Liquidated damages will not be enforced if the sum is 'grossly disproportionate to a reasonable estimate of actual damages' made at the time of contract formation." Kelly v. Marx, supra, quoting from Lynch v. Andrew, 20 Mass. App. Ct. 623, 628 (1985).

Here, as alleged in the Complaint, Design Mark paid the Defendants in full for Invoice No. 11874 in the amount of $307.25, Invoice No. 11954 in the amount of $10.45 as a penalty fee associated with Plaintiff failing to pay for the $307.25 on time, and the "Lickety-Split Software Maintenance" invoice in the amount of $2,610.00. (Compl. ¶¶ 42-49, Ex. G-N). As a result, Design Mark does not owe Defendants any money, as Design Mark paid the invoices in full and did not use Defendants for any services since payment of the invoices.  However, the Defendants have and continue to compound late penalty fees and are attempting to enforce their illegal and fraudulent billing practices through the ICC. (Compl. ¶¶ 50-51, 54).  These unfair penalty practices continued from 2021 to present and escalated the paid invoices of $307.25 and $10.45 and the Lickety-Split® Maintenance fee to an invoice totaling over $400,000 that Plaintiff "owes" to the Defendants. (Compl. Ex. Q).  Such PNP fees and interest fees are an unfair business practice under the statute and are unenforceable penalties from the liquidated damages provision. Such liquidated damages are unenforceable because they are grossly disproportionate to the actual damage, if any, the Defendants sustained and is unconscionably excessive. The actual damages suffered by the Defendants amount to $0.00 as opposed to the disproportionate amount of approximately over $400,000 Defendants claim to have suffered for payments the Defendants did receive and accept. Habeck also admitted that the remaining invoices totaling over $400,000 were penalty fees that

were further being compounded. (Compl. Ex. U). This illegal and fraudulent penalty fee billing scheme enforced under Article 2 of the PSA, drafted by Habeck, is a provision intended to punish Design Mark rather than compensate for payment for services rendered or lost profits and is therefore an unenforceable penalty and an unfair business practice. (Compl. Ex. D).

Additionally, Article 12 of the PSA and Article 13 of the SLA institute a mediation/arbitration clause favorable to the Defendants in order to further enforce the Defendants fraudulent penalty fee practices and charge Design Mark an additional $55,000 penalty for refusing to use the ICC. (Compl. Ex. A & D.) The Defendants have also now claimed that the $55,000 penalty would be doubled for each of the two agreements, the PSA and SLA, to equal $110,000 in penalties as a result of Design Mark refusing to use and recognize the ICC as a legitimate ADR service. (Compl. 60 & 70, Ex. S & T). The ICC is not the appropriate forum to decide that matter at issue especially considering the ICC's lack of impartial and un-certified arbitrators.

Without the issuance of a preliminary injunction, Design Mark is in immediate danger of the ICC imposing a decision and/or order against Design Mark, in favor of the Defendants, for the award of over $400,000, as well as loss of business and customers, and violation of due process rights. Allowing ICC to arbitrate the matter will render a biased decision in furtherance of the Defendants' fraudulent and illegal billing scheme. The ICC will continue to take actions in favor of the Defendants and the Defendants' unfair business practices that are in violation of Mass. Gen. Laws c. 93A.

### ii. The Defendants' committed fraud/deceit against the Plaintiff in regard to the agreements and by initiating arbitration through the ICC.

"To establish fraud or deceit, a plaintiff must show that the defendant misrepresented a fact. Mere statements of opinion are not actionable at common law." Briggs v. Carol Cars, Inc.,

407 Mass. 391, 395 (1990). Under "Massachusetts law, a plaintiff must prove that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that plaintiff reasonably relied upon the representation as true and acted upon it to his damage." Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009) (citation omitted). Rule 9(b) of the Federal Rules of Civil Procedure requires that the plaintiff plead fraud with particularity. Fed. R. Civ. P. 9(b); see Haydock v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985) ("[M]ere allegations of fraud . . . averments to conditions of mind, or referrals to plans or schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated.") (citing cases). In order to state a fraud claim with particularity pursuant to Rule 9(b), Design Mark must "at a minimum . . . allege the time, place and contents of the alleged misrepresentation, as well as the identity of the person making them." Kiah v. Aurora Loan Servs., LLC, 2010 U.S. Dist. LEXIS 121252, at *16 (D. Mass. Nov. 16, 2010); see also Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996). They must also plead reliance with particularity. Aliberti v. GMAC Mortgage, LLC, 779 F. Supp. 2d 242, 248 (D. Mass. 2011). Design Mark meets this standard as the Defendants misrepresented the EA and PSA to Craig Ingemi ("Ingemi"), Director of Information Technology at Design Mark, as being ad-hoc support contract agreements and then further engaged in unlawful acts by melding an arbitration clause to perfect their fraudulent billing scheme through a defective ADR process, the ICC, without Design Mark's consent.

On March 29, 2021, Ingemi emailed Habeck regarding the EA and PSA to clarify which of the two agreements established the "support only when needed" agreement between Habeck and Ingemi. (Compl. 29, Ex. E). In response, Habeck misrepresented that both the EA and PSA were needed as he represented that the PSA was the foundation about business and the EA rested

on that Foundation. (Compl. Ex. E). Ingemi, without authorization to approve complex contracts, detrimentally relied on Habeck's false representations that the two agreements were a simple technical support and a time and labor contract, for which Ingemi would have the authority to sign. Ingemi, relying on Habeck's fraudulent representations, signed off on the two agreements. These false misrepresentations were material to the contract as Ingemi, before and after signing the two agreements, made clear that Design Mark was looking for only a time and labor and technical support agreement only when needed by Design Mark's IT Department. (Compl. 25, 29, 30-34). Renaud Megard, President and CEO of Design Mark, and Alan Rose, CFO of Design Mark, never saw, discussed, or agreed to the provisions in the PSA and SLA. (Compl. 35-36 & 60-61).

On November 30, 2022, after continuing to receive additional PNP and penalty interest invoices from Habeck, disregarding that Plaintiff paid the original two invoices totaling $317.70 in full, Ingemi inquired what the original amount owed was and what services were provided outside of all the "late" fees Habeck was imposing as well as what the first late fee amount was. Habeck responded that the invoice was self-explanatory and to look at the spreadsheet attached to the invoices he has been sending. (Compl. Ex. O). Habeck provided no further explanation or break down as to how Plaintiff was continuing to be sent compounded penalty fee invoices when Plaintiff paid the invoices and the SLA Maintenance fee at issue in full to the Defendants. (Compl. Ex. L-N). On December 5, 2022, Ingemi emailed Habeck stating that Plaintiff had paid the original invoice and the late fee. Ignoring the fact that Plaintiff paid Defendants in full, Habeck sent another fraudulent invoice on December 7, 2022 with an attached spreadsheet acknowledging the receipt of Plaintiff's payment in full for the two invoices at issue. (Compl. Ex. P).

The Defendants intentionally and unlawfully enforced a penalty fee billing scheme designed to bilk and disproportionately punish its client, Design Mark, for "late payments" to

accelerate money "owed" to the Defendants. The Plaintiff detrimentally relied on the Defendants' false statements of material fact and/or its failure to disclose certain material of facts and/or information regarding the EA, PSA, and SLA between the two parties and its provision relating to penalty fees, late interest fees, and mediation/arbitration restriction.

The Defendants manipulated the late penalty provisions of the PSA and SLA in order to enrich themselves for minimal services rendered to Plaintiff, for which Plaintiff had paid in full. Despite Design Mark's various attempts to resolve the fraudulent billing issues, the Defendants have continued to harass and send additional late penalty fees and invoices, accumulating an original invoice of $317.17 to an illegal amount of over $400,000 and raising. (Compl. Ex. Q). Defendants then harassed and pressured Plaintiff to mediate/arbitrate the over $400,000 invoice dispute through the ICC, which Defendants knew favored them and the Defendants have used for decades. (Compl. 64 & 66, Ex. V). Defendants have also initiated arbitration with the ICC without Design Mark's consent, knowing and without disclosing the ICC's favoritism towards the Defendants and Defendants' history with the ICC. The ICC's bias towards the Defendants was not discovered until after Habeck initiated the arbitration process with ICC. (Compl. 64 & 66, Ex. V). The arbitration clause within the PSA and SLA were never discussed or agreed upon between Habeck and Ingemi or made apparent. The Defendants intentionally wrote into the PSA and SLA a restriction of mediation/arbitration through the ICC fully knowing it was not an impartial arbitration process and would rule in the Defendants favor with regards to their fraudulent penalty scheme.

The Defendants have also now fraudulently claimed that Design Mark will be penalized double the $55,000 penalty fee for each of the two agreements, the PSA and SLA, to equal $110,000 in penalties as a result of Design Mark refusing to use and recognize the ICC as a

legitimate ADR service. (Compl. 60 & 70, Ex. S & T). The ICC is not the appropriate forum to decide the matters at issue especially considering the ICC's lack of impartial and un-certified arbitrators.

As a result of the Defendants ongoing fraudulent billing scheme through ICC arbitration, Design Mark has and will continue to suffer severe financial harm as a result of Defendants' illegal and fraudulent penalty billing scheme, loss of business credit, and violations of due process rights if the matter continues to be arbitrated through the partial ICC.

### iii. The ICC arbitration clauses and penalty fee clauses of the PSA and Lickety-Split® SLA are unconscionable contract clauses.

Such arbitration clauses are unenforceable and unconscionable under 9 U.S.C.S. § 2 as they are designed to avoid federal and state consumer protection laws and required the application of tribal law only. Gingras v. Think Fin., Inc., 922 F.3d 112, 117 (2d Cir. 2019). Historically, courts considered a contract unconscionable if it was "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Hume v. United States, 132 U.S. 406, 411, 10 S. Ct. 134, 33 L. Ed. 393 (1889), quoting from Earl of Chesterfield v. Janssen, 28 Eng. Rep. 82, 100 (Ch. 1750). "The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect." Miller v. Cotter, 448 Mass. 671, 679 (2007), citing Restatement (Second) of Contracts § 208 comment a (1981). "Because there is no clear, all-purpose definition of 'unconscionable,' nor could there be, unconscionability must be determined on a case by case basis . . . , giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 292-293, (1980).

Under the circumstance of this case, the arbitration provision under Article 12 of the PSA and Article 13 of the SLA is unconscionable. The mediation/arbitration clause is not conspicuous, as it appeared in miniscule font by the Defendants, is not highlighted, and is obscurely embedded deep in the agreements such that it creates "unfair surprise" to consumers, such as Design Mark. (Compl. Ex. A & D). The arbitration clauses were never discussed among the parties and was buried in the agreement. Additionally, Ingemi did not have authorization to agree to such provision and was not as experienced as the Defendants regarding the contractual matter. The arbitration clause further does not permit arbitration decisions to be appealed, which violates Design Marks' due process rights. The mediation/arbitration of the fraudulent penalty fees through the ICC is evident to be biased towards Defendants and has been a favorable process for the Defendants in the past. (Compl. 64 & 66, Ex. V). The Defendants' intent of restricting arbitration only through the ICC was to give Defendants an advantage over other parties and guarantee the Defendants are rewarded for their fraudulent billing practices against consumers, such as Design Mark. The Defendant and the ICC's false representation of an impartial arbitration process under the PSA and SLA is an unfair surprise and is oppressive to Design Mark. Such a provision is a systematic effort to impose arbitration to the Defendants' advantage and is exclusively one-sided in favor of the Defendants. Habeck admitted to Design Mark's counsel that the ICC "favors the little guy," referring to himself as a little guy. These factors favor procedural and substantive unconscionability. Higher Ground v. Arks, Inc., 2011 U.S. Dist. LEXIS 116138 (D. Idaho 2011) (The court determined that an arbitration agreement was both procedurally and substantively unconscionable.). As a result, the ICC arbitration clauses have been found to be unconscionable and unenforceable and are therefore void and severable from the agreements.

The Defendants have and continue to actively exploit its fraudulent and illegal penalty fee billing scheme by the assistance of the ICC. The Defendants have unfairly deprived Design Mark of a fair and impartial arbitration process. The arbitration clause and penalty fees must be void as they are unconscionable, unfair, and against public policy. As a result, Design Mark has suffered substantial harm and will continue to suffered substantial irreparable harm if a preliminary injunction is not issued to enjoin arbitration of this case through the ICC.

### C. Enforcement is Necessary to Prevent Irreparable Harm to Design Mark.

A plaintiff suffers irreparable harm when, despite winning on the merits, there is no adequate legal remedy to make the plaintiff whole. GTE Products Corp. v. Stewart, 414 Mass. 721, 724 (1993); see also Packaging Industries Group, Inc. v. Cheney, 380 Mass. 616, 617 (1980). Irreparable harm requires "an actual, viable, presently existing threat of serious harm". Sierra Club v. Larson, 769 F. Supp. 420, 422 (D. Mass. 1991) (citation omitted). Furthermore, the harm must be of a kind that cannot be redressed through money damages alone. Bio-Imaging Techs., Inc. v. Marchant, 584 F. Supp. 2d 322, 330 (D. Mass. 2008). Courts routinely conclude that harm of this nature is irreparable and warrants the issuance of an injunction. Generally, courts recognize that losses that may not be "accurately measurable or adequately compensable by money damages" constitute irreparable harm. Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996). Loss of reputation and loss of business, for example, constitute irreparable harm. See Schawbel Corp. v. Conair Corp., 122 F. Supp. 2d 71, 84 (D. Mass. 2000) (plaintiff claimed "that it will likely be forced out of business" without injunction); Phillips v. Pembroke Real Estate, Inc., 288 F. Supp. 2d 89, 104 (D. Mass. 2003) ("[T]he loss of Mr. Phillips' reputation is not quantifiable.").

In addition to having a high likelihood of success on the merits, Plaintiff will suffer

14

irreparable harm unless they receive the requested injunctive relief. Defendant fraudulent billing practices are illegal and Design Mark does not owe any money to the Defendants, as the Defendants were paid in full and Design Mark did not render any more services from the Defendants after Design Mark paid them. Until a final judgment is entered in this matter by this Court, the Defendants will continue to compound fraudulent and illegal interest penalty fees against Design Mark and, if arbitrated through the ICC, will receive a decision in favor of Defendants and order Design Mark to pay over $400.000 to Defendants. This type of award will not only cause financial harm and additional accumulation of attorney's fees to Design Mark, but violate Design Mark's right to a fair and unbiased arbitration process. Plaintiff will also suffer immediate irreparable harm if arbitration is not enjoined, because it will be forced to either participate in a proceeding to which it did not consent, or abstain and risk a default judgment against it, which is not appealable.

The Defendants' fraudulent and illegal penalty fee billing practices and the use of ICC, who further enables the Defendants' scheme, will not only cause financial to harm to Design Mark, but also harm its business credit, reputation, and due process rights. Therefore, if the Defendants are permitted to continue arbitration through the ICC, the Design Marks will continue to be harmed to the detriment of the company, but to the benefit of the Defendants and the ICC.

As a result of the Defendants' violations of Massachusetts laws, removing the case from being arbitrated by the ICC and allowing the case to be heard by this Court will provide additional evidence of the types of damages that the Defendants have caused and provide evidence of the types of damages that will result as a result of the Defendant fraudulent and illegal billing scheme. Enjoining the ICC arbitration will also ensure that Design Mark and the Defendants are in an appropriate judicial forum that is impartial, fair, and does not violate either party's due process

rights. If the Defendants are permitted to continue to arbitrate the matter with the ICC, Design Mark's company will continue to accrue compounded penalty fees from the Defendants and be deprived of its due process rights. The broad and unceasing nature of the damage is indisputable evidence of the irreparable harm the Plaintiff will suffer if the request is denied. Therefore, an injunction is necessary to protect Design Mark from continuing irreparable harm and violations of due process.

### D. The Harm to Design Mark Without an Injunction Greatly Outweighs the Harm to Defendants if an Injunction is Issued.

When deciding whether to issue a preliminary injunction, the Court's task is to balance the substantial risk of irreparable harm to the moving party "against any similar risk of irreparable harm which granting the injunction would create for the opposing party." Packaging Industries Group, Inc., 380 Mass. at 609. Here, an injunction would cause little to no harm to the Defendants, and the plain language of the statutes, and Massachusetts law, support Design Mark's position.

As discussed above, Design Mark faces significant irreparable harm, including the infliction of incalculable damages, severe and immediate damage to the company and its consumers and business, all of which necessitate the issuance of immediate injunctive relief. The Defendants' unfair business practices against Design Mark is a direct threat to the Design Mark's goodwill, such that the company faces irreparable harm and not just economic losses. "[D]amage to a client relationships and customer good will has been held to be 'irreparable harm' under Massachusetts law." Bear, Stearns & Co., Inc. v. Sharon, 550 F.Sup.2d 174, 178 (D. Mass. 2008), citing All Stainless, Inc. v. Colby, 364 Mass. 773 (1974). Particularly, courts have found a risk of irreparable harm where they have found a "plausible risk of future customer defections and that

the damages associated with those defections may escape accurate measurement." <u>Optos, Inc. v.</u>

<u>Topcon Med. Sys., Inc.</u>, 777 F.Sup.2d 217, 239 (D. Mass. 2011). Design Mark has shown that the

Defendants pose a serious risk of continuing to convert the Design Mark's goodwill for their own

benefit through the ICC, causing irreparable harm to the company and accumulating erroneous

penalty fees and attorney's fees.

The preponderance of the evidence favors Design Mark's request for an order enjoining

the ICC from arbitrating the matters at issue. The benefit of injunctive relief to Design Mark far

outweighs any detriment to the Defendants who has and continues to benefit from their unlawful

conduct. The requested injunction merely requires: (1) the Court issue a Preliminary Injunction

and/or Temporary Restraining Order, enjoining Defendants, Unbeaten Path International Ltd. and

Milton C. Habeck, from arbitrating the matters at issue through the ICC; and (2) That the Court

order that no further proceeding and/or decisions are rendered by the ICC in this matter. Any harm

that the Defendants suffers will be the natural result of their own bad actions in enforcing unfair

and illegal business practices through the use of their illegal and fraudulent illegal penalty fee

scheme and enforcing the scheme though the ICC, which result in both the Defendants and the

ICC to financially enrich themselves. This injunctive relief would be of no burden or prejudice to

any party and the Defendants will not suffer any irreparable harm upon the issuance of the

proposed Preliminary Injunction and/or Temporary Restraining Order. To deny the Plaintiff's

request would run counter to the likely outcome of trial of this matter and deprive the Plaintiff of

its right to a fair and impartial proceeding and decision.

### E. Injunction Furthers the Public Interest.

The fourth and final factor courts must consider when granting a temporary restraining

order or preliminary injunction is "the effect, if any, that an injunction (or the withholding of one)

may have on the public interest." <u>Worthley v. Sch. Comm. of Gloucester</u>, 652 F. Supp. 3d 204, 208 (D. Mass. 2023). It is in the public interest to enforce consumer protection laws and prevent unlawful debt collection practices. <u>Montoya v. CRST Expedited, Inc.</u>, U.S. Dist. LEXIS 96495, at *4 (D. Mass. June 2, 2020). Courts also recognize the public interest in the enforcement of consumer protection laws. See <u>F.T.C. v. Mallett</u>, 818 F. Supp. 2d 142, 149 (D.D.C. 2011) ("The public interest in ensuring the enforcement of federal consumer protection laws is strong.") Design Mark's strong likelihood of success on the merits, an injunction is likely to further those interests.

Here, issuance of the injunction serves the public interest of enforcing the Massachusetts Consumer Protection Act. The legislative history of Section 93A demonstrates "a strong public policy in favor of the aggregation of small consumer protection claims." <u>Feeney v. Dell</u>, 454 Mass. 192, 201, 908 N.E.2d 753, 762 (2009); see also <u>id.</u> at 762-63 (describing the legislative history of Section 93A). (harm to public agencies constitutes harm to public interest). There is a public interest in deterring similar fraudulent and illegal conduct by the Defendants against other customers in Massachusetts and throughout the nation.

Additionally, it furthers public interest with respect to whether judicial enforcement of religious arbitration agreements may violate the Establishment Clause. (U.S. Const. amend. I). Judicial enforcement of religious arbitration agreements would allow religious institutions to acquire effective control over the government's power to enforce the civil and statutory law. Brian Hutler, <u>Religious Arbitration and the Establishment Clause</u>, 33 OHIO ST.J. ON DISP. RESOL. 337, 339-340 (2018). As such, enforcement of religious arbitration agreements may run afoul of the Establishment Clause's "nondelegation doctrine," according to which the government may not

delegate its power to religious institutions where that delegation results in a fusion of governmental and religious functions. Id.

### IV.    Conclusion

For the reasons discussed above, Design Mark has demonstrated a strong likelihood of success on the merits of its claims, that it will suffer irreparable harm in the absence of a preliminary injunction, and that the harm to Design Mark outweighs the harm to the Defendants who has and continues to benefit through their fraudulent billing scheme through the ICC. The injunction will not disserve the public interest; in fact, the public interest in preventing the actions taken by the Defendants and the ICC in this case that were undoubtedly designed to defraud consumers, such as Design Mark. Design Mark respectfully requests that this Honorable Court grant him a preliminary injunction and/or temporary restraining order in accordance with the *Plaintiff's Emergency Motion for Preliminary Injunction and/or Temporary Restraining Order*.

Respectfully submitted,

DESIGN MARK,
By its Attorneys,

Scott W. Lang, Esq., BBO #285720
Anastasia Kondrasov, Esq., BBO #713296
Lang, Xifaras & Bullard
115 Orchard Street
New Bedford, MA  027
(508) 992-1270 / Fax: 508-993-8696
swlang@lxblaw.com
akondrasov@lxblaw.com

Dated: July 25, 2024

# EXHIBIT 1

## Anastasia Kondrasov

| | |
|---|---|
| **From:** | Atty. Scott W. Lang |
| **Sent:** | Monday, July 22, 2024 5:39 PM |
| **To:** | Anastasia Kondrasov |
| **Subject:** | FW: please forward this memo/motion to the arbitrator Cort Thomas |
| | |
| **Importance:** | High |

Attach this as an exhibit. scott

Attorney Scott W. Lang
Lang, Xifaras & Bullard
115 Orchard Street
New Bedford, MA 02740
Tel. 508-992-1270
Fax 508-993-8696
E-mail: swlang@lxblaw.com

This electronic mail transmission contains information from the Law Offices of Lang, Xifaras & Bullard which is confidential and/or privileged. This information is intended for the use of the addressee only. Please note that any disclosure, printing, photocopying, distribution or use of the contents or attachments of this e-mailed information by persons other than the addressee or an agent of the addressee is prohibited. If you have received this electronic mail in error, please notify us via electronic mail reply to the sender immediately.

**From:** Milt Habeck <mhabeck@unpath.com>
**Sent:** Monday, July 22, 2024 12:13 PM
**To:** 'Annette Friesen' <annette@aorhope.org>
**Cc:** Atty. Scott W. Lang <swlang@lxblaw.com>
**Subject:** RE: please forward this memo/motion to the arbitrator Cort Thomas
**Importance:** High

Hi ...
Well ......... my first request is to add to the invitation list ... which is not a Rule 29 subject.
Too late to do that once the meeting has started ... that's an urgent thing.
Please forward my memo to him right away.

Thanks, Milt

> **From:** Annette Friesen [mailto:annette@aorhope.org]
> **Sent:** Monday, July 22, 2024 10:31 AM
> **To:** Milt Habeck
> **Cc:** Atty. Scott W. Lang
> **Subject:** Re: please forward this memo/motion to the arbitrator Cort Thomas
> **Importance:** High
>
> Dear Milt,

I am in receipt of the email from 7/20/24 that you would like me to send to Arbitrator.

In light of the fact that we have a hearing scheduled this week, I am going to wait before I send this over and simply inform Mr. Thomas that a request for Temporary Relief, per ICC Rule 29 has been requested. IF Mr. Thomas wants to review this before Wednesday, I will forward it along, but I am requesting that you be prepared to present this information to him in the hearing.

Annette

Annette Friesen
Certified Christian Conciliator
Case Administration
406-300-4560, ext. 1002
annette@aorhope.org
https://www.aorhope.org/bookings-checkout/meeting-with-annette/book



**Ambassadors**
of
**Reconciliation**

*This email and any attachments are for the exclusive and confidential use of the intended recipient(s). If you receive this email in error, please notify us immediately by return email and promptly delete this message and its attachments from your system.*

On Jul 20, 2024, at 10:37 PM, Milt Habeck <mhabeck@unpath.com> wrote:

Good Monday morning Mr. Thomas ....

Permit me to present two requests.

# First request ....

You've invited attorney Scott Lang to be present at this week's hearing and ICC rule 13.E (snip below) permits Scott to speak for his client.

E.  During mediation, attorneys shall serve only as advisors to
will be expected to speak for themselves as much as possi
attorneys may represent and speak for their clients. Attor
respect the conciliatory nature of the process and avoid u

The required appearance of Design Mark (DM) would be the first time I've had an ICC-administered discussion with him ..... so ...... the eternal optimist in me hopes that maybe with your presence, we could get this whole thing settled. However, with just Scott in attendance (excluding Design Mark's CEO and/or CFO), it's a vain hope not worthy of a prayer request. Why? Well as demonstrated many times, including by some of the content in Scott's civil court filing, Scott doesn't grasp very crucial parts of this matter.

I can't tell if that's because 1) DM has deliberately misled Scott, or 2) because DM doesn't fully understand the matter either and Scott just parrots what he's been told, or 3) DM has been transparent with Scott but then Scott elected to be dumb-smart/evasive about facets of this, or 4) DM and Scott have actively collaborated to construct a deliberately misleading civil complaint.

I'll present one nugget of information that Annette can testify to. ICC involvement began at Easter. On several April and May occasions, Scott wrote to Annette that Unbeaten Path's claim should be rejected by the ICC out of hand because it was fraudulent, etc., etc. Then on May 31st he asked Annette for a copy of the pertinent agreements between DM and Unbeaten Path:

On May 31, 2024, at 3:01 PM, Atty. Scott W. Lang <swlang

Please send me a copy of the arbitration agreement signed by be
same. i will contact you next week to let you know my clients po

Attorney Scott W. Lang
Lang, Xifaras & Bullard

Well shucks, he was telling Annette about Unbeaten Path fraud without ever having inspected the pertinent legal contracts between the parties. (And judging by important facets of the civil action content, he still hasn't

performed a competent inspection of those signed agreements.)  I remember thinking back then at the end of May that whatever Scott's billing rate was, it was way too high.

I apologize for not getting to my first specific request until this deep in this document:
**I request that you require the CEO and/or CFO of DM to also attend this week's hearing.**
With at least one of those guys there, then a happy surprise settlement is a prayer request worthy of our Lord's attention.

# Second request ....

I've been reading ICC rule 29:

### 29. Temporary/Extraordinary Relief

    A.  A party may request immediate temporary relief (e.g., tempo
        preliminary injunction) to safeguard property or rights that a
        clause or agreement that requires arbitration or mediation/a
        Rules. Such extraordinary relief will not be granted unless the
        demonstrated, by a clear showing (1) a substantial likelihood
        (2) a substantial threat of irreparable harm if the temporary
        that the threatened injury outweighs any harm that may res
        an injunction or other relief; and (4) that the temporary relie
        interests.

    B.  Temporary relief may be granted at any stage of the conciliat
        fashioned so as not to substantially prejudice the rights of the
        determination of the dispute.

    C.  Matters of temporary relief shall be decided by the Arbitrato
        appointed, by the Special Arbitrator appointed by the Admini
        has not yet been appointed, ICC shall serve as Administrator

    D.  A request for temporary relief is subject to Rule 40C.

    E.  Decisions regarding temporary relief may be entered in any c
        jurisdiction.

Scott's Friday's civil court filing is an enormous breach of this promise written in all of the contracts:

> **Each party expressly waives its right to file/introdu**
> **other party in any civil court or any other civil juris**
> **not to do so, except to enforce an arbitration decisi**
> **promise in the preceding sentence will pay the othe**
> **for dismissal of civil cases will not be viewed as a bi**
> **arbitration award may be entered in any court othe**

Unbeaten Path can't afford legal representation in civil court cases. We are a  t-i-n-y  company. The only way we've stayed in business since 1991 is to stay entirely out of courts. No customer or partner or vendor has ever taken us into a court. We never would have contemplated entering a contract with DM unless the ICC was the exclusive dispute resolution approach .... because the ICC requires no attorney representation. Scott knows all this. He's attempting to prevail on this matter using DM's enormous relative size to bankrupt us with attorney fees.

**Please grant temporary/extraordinary relief in the form of a restraining order that prevents further action on the federal case Scott has filed until ICC arbitration is finished**. Evaluating the four tests for a restraining order:

(1) It's **extremely likely** that the federal judge will eventually see the clearly written exclusive arbitration language in all the DM-UPI contracts and throw DM's filing out. Judges have plenty of other stuff to work on.

(2) Attorney fees in Massachusetts would bankrupt us. We had to pay the $21K arbitration fees with a credit card to get another 30 days to scrape together our nickels to pay 100% of the ICC fees even though that cost us another 3% penalty for credit card processing cost.

(3) Even if you eventually determine that DM should pay all of our two claims, it would be a trivial $ amount for DM. Temporary relief is needed to avoid a catastrophe visited on Unbeaten Path only because we have infinitesimal financial resources compared to the other party. That catastrophic result would not rest on the merits of this matter. This is not an equitable/balanced situation.

(4) The balance of public interests would favor continuing arbitration and not cluttering our court system with flawed civil cases. There is no facet of the federal lawsuit that cannot be competently considered by an ICC arbitrator. Scott insults the ICC in his civil action by claiming the ICC is biased .... with zero evidence to support that claim. It's in the public interest is to defend the good Christian-inspired work of the ICC and not shrink from that objective.

**Thank you for prayerfully considering these two requests.**

Peace to you and God bless,
Milt Habeck
desk: (262) 681-3151

Unbeaten Path
INTERNATIONAL



# EXHIBIT 2

**Atty. Scott W. Lang**

| | |
|---|---|
| **From:** | Milt Habeck <mhabeck@unpath.com> |
| **Sent:** | Tuesday, May 7, 2024 6:05 PM |
| **To:** | Atty. Scott W. Lang |
| **Subject:** | RE: ICC Case #240330A - Notification of Arbitration Initiation |

Please extend the time 48 hours.
I have an appointment with someone to talk about it and he couldn't fit me into his office schedule until late Thursday.

---

**From:** Atty. Scott W. Lang [mailto:swlang@lxblaw.com]
**Sent:** Monday, May 6, 2024 9:14 AM
**To:** Milt Habeck; RMegard@nficorp.com
**Cc:** 'Annette Friesen'
**Subject:** RE: ICC Case #240330A - Notification of Arbitration Initiation

Milt,

The bill you presented Desing Mark is fraudulent, a violation of Federal and Massachusetts Consumer Protection Laws and your dunning emails constitute harassment. I reviewed all of your bills and all of the paperwork in this case and my client has made a good faith one time settlement offer of $3,219.00. You have until tomorrow May 7, 2024 close of business to accept the same or the settlement proposal will be withdrawn and I will file suit. Cordially, Scott

Attorney Scott W. Lang
Lang, Xifaras & Bullard
115 Orchard Street
New Bedford, MA 02740
Tel. 508-992-1270
Fax 508-993-8696
E-mail: swlang@lxblaw.com

This electronic mail transmission contains information from the Law Offices of Lang, Xifaras & Bullard which is confidential and/or privileged. This information is intended for the use of the addressee only. Please note that any disclosure, printing, photocopying, distribution or use of the contents or attachments of this e-mailed information by persons other than the addressee or an agent of the addressee is prohibited. If you have received this electronic mail in error, please notify us via electronic mail reply to the sender immediately.

**From:** Milt Habeck <mhabeck@unpath.com>
**Sent:** Monday, May 6, 2024 1:34 AM
**To:** Atty. Scott W. Lang <swlang@lxblaw.com>; RMegard@nficorp.com
**Cc:** 'Annette Friesen' <annette@aorhope.org>; mhabeck@unpath.com
**Subject:** RE: ICC Case #240330A - Notification of Arbitration Initiation
**Importance:** High

Good Monday morning Scott and Renaud .......

The two attached invoices provide a current state measurement of the amount due sought in ICC arbitration:  the summation is about $344K.

The snip below is taken from Article 13 of the Software License Agreement we signed. Precisely parallel language is in the Professional Services Agreement we signed.

> Each party expressly waives its right to file/introduce any r
> other party in any civil court or any other civil jurisdiction
> not to do so, except to enforce an arbitration decision. The
> promise in the preceding sentence will pay the other party
> for dismissal of civil cases will not be viewed as a breach o
> arbitration award may be entered in any court otherwise F

Scott, your May 3 communication in the email chain below announces your intent to breach the unambiguous promise in that snip. Be advised that if you breach that promise, then Unbeaten Path will add the $55,000 penalty + costs to the existing ICC case (or, if the ICC so advises, open a second ICC case seeking the $55,000 penalty).

There is no wisdom in adding another breach of contract to the current list of Design Mark contract breaches. That approach is 180° degrees removed from guidance gleaned from of any competent exegesis of the Bible .... which is the law governing our agreements. Lack of respect for scripture is well understood to be "barking up the wrong tree." The Bible is God's Word.

**Renaud**, in a telephone conference x years ago, you impressed me as a very reasonable and affable individual. Early this week I will telephone you. If (508) 998-9021 isn't the most reliable number to call, please give me a better one. Better yet, call me when you have 14 minutes to work on this. The ICC has formally closed the mediation step ... but we can solve all of this in 14 minutes without an ICC mediator's help. Let's do that. And let's not invite any attorneys to our call.

Peace to you and God bless,
Milt
desk:  (262) 681-3111

---

**From:** Atty. Scott W. Lang [mailto:swlang@lxblaw.com]
**Sent:** Friday, May 3, 2024 9:11 AM
**To:** Annette Friesen
**Cc:** RMegard@nficorp.com; Milt Habeck
**Subject:** RE: ICC Case #240330A - Notification of Arbitration Initiation

My apologies, I am referring this case to the Attorney General's Office.

Attorney Scott W. Lang
Lang, Xifaras & Bullard
115 Orchard Street
New Bedford, MA 02740
Tel. 508-992-1270
Fax 508-993-8696
E-mail: swlang@lxblaw.com

**From:** Annette Friesen <annette@aorhope.org>
**Sent:** Friday, May 3, 2024 10:09 AM
**To:** Atty. Scott W. Lang <swlang@lxblaw.com>
**Cc:** RMegard@nficorp.com; Milt Habeck <mhabeck@unpath.com>
**Subject:** Re: ICC Case #240330A - Notification of Arbitration Initiation

Dear Scott,

Thank you so much for advising me of your position. You pointed out in your email that you "were not" referring this case to the Mass Attorney General's office. Did you mean you were or were not? If you do, we would pause this case until jurisdiction is confirmed. However, if you are not submitting this case, the issue of jurisdiction could be submitted at the very beginning of the arbitration process with the ICC.

If you do submit this case to the Attorney General, the ICC respectfully requests that documentation be sent to verify this so we can officially put this case on hold.

I appreciate you communicating to me regarding this.

Sincerely, Annette

Annette Friesen
Certified Christian Conciliator
Case Administration
844-447-2671, ext. 1002
annette@aorhope.org
https://www.aorhope.org/bookings-checkout/meeting-with-annette/book

On May 3, 2024, at 7:26 AM, Atty. Scott W. Lang <swlang@lxblaw.com> wrote:

Ms. Friesen,

Please be advised that Design Mark Industries never agreed to this jurisdiction. Further, Unbeaten Path's invoices to Design Mark are not legitimate in any way. I am not referring this case to the Mass. Attorney General's Office for violations of Mass. General Laws 93A, Consumer Protection Act.

Scott

3

Attorney Scott W. Lang
Lang, Xifaras & Bullard
115 Orchard Street
New Bedford, MA 02740

---

**From:** Annette Friesen <annette@aorhope.org>
**Sent:** Thursday, May 2, 2024 11:54 AM
**To:** Atty. Scott W. Lang <swlang@lxblaw.com>; RMegard@nficorp.com
**Cc:** Milt Habeck <mhabeck@unpath.com>
**Subject:** ICC Case #240330A - Notification of Arbitration Initiation
**Importance:** High

Dear Attorney Lang and Mr. Megard,

Please find attached a letter explaining the request from Unbeaten Path to begin Arbitration with Design Mark Industries. You will also be receiving the attached in Certified Priority Mail.

If you should have any questions, please feel free to contact me.

Sincerely,
Annette

Annette Friesen
Certified Christian Conciliator
Case Administration

4

# EXHIBIT 3

## Atty. Scott W. Lang

| | |
|---|---|
| **From:** | Annette Friesen <annette@aorhope.org> |
| **Sent:** | Tuesday, May 7, 2024 6:38 PM |
| **To:** | Milt Habeck |
| **Cc:** | Atty. Scott W. Lang |
| **Subject:** | Re: ICC Case #240330A - Notification of Arbitration Initiation |

Dear Milt,

You were copied on the email containing the letter that was sent to Mr. Megard and Mr. Lang. The date in the letter that gave Design Mark Industries 20 days to respond is Thursday, May 23rd. No matter what has been communicated in any email with Mr. Lang, they have until the date and time of the letter to respond. If they do not, I will be communicating with Mr. Lang to confirm their position.

By the way, given that you have requested the ICC to implement Arbitration, I as the Case Administrator, will not have any "ex parte" communication within the process, therefore, Mr. Lang will be copied on all our communications even throughout the process of ICC Rule 37.

Also, throughout the arbitration process, it is still possible for parties to step away and work together toward a settlement. I offer this as a reminder that whether we do mediation or arbitration, ICC Rule 1 still applies.

In Christ,
Annette

Annette Friesen
Certified Christian Conciliator
Case Administration
844-447-2671, ext. 1002
annette@aorhope.org
https://www.aorhope.org/bookings-checkout/meeting-with-annette/book



Ambassadors
*of*
Reconciliation

*This email and any attachments are for the exclusive and confidential use of the intended recipient(s). If you receive this email in error, please notify us immediately by return email and promptly delete this message and its attachments from your system.*

On May 7, 2024, at 4:12 PM, Milt Habeck <mhabeck@unpath.com> wrote:

Good Tuesday afternoon Annette ...
Please help me with my 20-day calendar math.
Questions:

    a.  I don't know for sure when you started counting, so not sure which day will be day #20.

    b.  Are we currently still in the 20 day "wait for a response" period .... or .... did the content of Scott's response cause the 20 day counting to stop because Rule 37 is now in effect? This question is born from the text I turned to red in your mail below.

Thanks and peace to you,
Milt

---

**From:** Annette Friesen [mailto:annette@aorhope.org]
**Sent:** Friday, May 3, 2024 9:27 AM
**To:** Atty. Scott W. Lang
**Cc:** RMegard@nficorp.com; Milt Habeck
**Subject:** Re: ICC Case #240330A - Notification of Arbitration Initiation

Thank you Scott, that is what I thought.

Please note that until we receive the documentation that you have submitted this case to the Attorney General, or that any other legal action has been taken (ICC 5G), we will proceed under ICC Rule 37. Also allow me to add that all concerns and evidences that you have related to this dispute can become part of your representation of your client within the ICC Arbitration process (ICC Rule 14 B, Rule 34 A, Rule 36). A copy of the Rules are attached and you will receive a printed version soon.

Annette

Annette Friesen
Certified Christian Conciliator
Case Administration
844-447-2671, ext. 1002
annette@aorhope.org
https://www.aorhope.org/bookings-checkout/meeting-with-annette/book



**Ambassadors**
*of*
**Reconciliation**

This email and any attachments are for the exclusive and confidential use of the intended recipient(s). If you receive this email in error, please notify us immediately by return email and promptly delete this message and its attachments from your system.

On May 3, 2024, at 8:10 AM, Atty. Scott W. Lang <swlang@lxblaw.com> wrote:

My apologies, I am referring this case to the Attorney General's Office.

Attorney Scott W. Lang
Lang, Xifaras & Bullard
115 Orchard Street
New Bedford, MA 02740
Tel. 508-992-1270
Fax 508-993-8696
E-mail: swlang@lxblaw.com

This electronic mail transmission contains information from the Law Offices of Lang, Xifaras & Bullard which is confidential and/or privileged. This information is intended for the use of the addressee only. Please note that any disclosure, printing, photocopying, distribution or use of the contents or attachments of this e-mailed information by persons other than the addressee or an agent of the addressee is prohibited. If you have received this electronic mail in error, please notify us via electronic mail reply to the sender immediately.

---

**From:** Annette Friesen <annette@aorhope.org>
**Sent:** Friday, May 3, 2024 10:09 AM
**To:** Atty. Scott W. Lang <swlang@lxblaw.com>
**Cc:** RMegard@nficorp.com; Milt Habeck <mhabeck@unpath.com>
**Subject:** Re: ICC Case #240330A - Notification of Arbitration Initiation

Dear Scott,

Thank you so much for advising me of your position. You pointed out in your email that you "were not" referring this case to the Mass Attorney General's office. Did you mean you were or were not? If you do, we would pause this case until jurisdiction is confirmed. However, if you are not submitting this case, the issue of jurisdiction could be submitted at the very beginning of the arbitration process with the ICC.

If you do submit this case to the Attorney General, the ICC respectfully requests that documentation be sent to verify this so we can officially put this case on hold.

I appreciate you communicating to me regarding this.

Sincerely,
Annette

Annette Friesen

3

Certified Christian Conciliator
Case Administration
844-447-2671, ext. 1002
annette@aorhope.org
https://www.aorhope.org/bookings-checkout/meeting-with-annette/book



Ambassadors
of
Reconciliation™

*This email and any attachments are for the exclusive and confidential use of the intended recipient(s). If you receive this email in error, please notify us immediately by return email and promptly delete this message and its attachments from your system.*

On May 3, 2024, at 7:26 AM, Atty. Scott W. Lang
<swlang@lxblaw.com> wrote:

Ms. Friesen,

Please be advised that Design Mark Industries never agreed to
this jurisdiction.  Further, Unbeaten Path's invoices to Design
Mark are not legitimate in any way.  I am not referring this case
to the Mass. Attorney General's Office for violations of Mass.
General Laws 93A, Consumer Protection Act.

Scott

Attorney Scott W. Lang
Lang, Xifaras & Bullard
115 Orchard Street
New Bedford, MA 02740
Tel. 508-992-1270
Fax 508-993-8696
E-mail: swlang@lxblaw.com
This electronic mail transmission contains information
from the Law Offices of Lang, Xifaras & Bullard which is
confidential and/or privileged. This information is intended
for the use of the addressee only. Please note that any
disclosure, printing, photocopying, distribution or use of

the contents or attachments of this e-mailed information by persons other than the addressee or an agent of the addressee is prohibited. If you have received this electronic mail in error, please notify us via electronic mail reply to the sender immediately.

---

**From:** Annette Friesen <annette@aorhope.org>
**Sent:** Thursday, May 2, 2024 11:54 AM
**To:** Atty. Scott W. Lang <swlang@lxblaw.com>; RMegard@nficorp.com
**Cc:** Milt Habeck <mhabeck@unpath.com>
**Subject:** ICC Case #240330A - Notification of Arbitration Initiation
**Importance:** High

Dear Attorney Lang and Mr. Megard,

Please find attached a letter explaining the request from Unbeaten Path to begin Arbitration with Design Mark Industries. You will also be receiving the attached in Certified Priority Mail.

If you should have any questions, please feel free to contact me.

Sincerely,
Annette


Annette Friesen
Certified Christian Conciliator
Case Administration
406-300-4560 ext. 1002
annette@aorhope.org
https://www.aorhope.org/bookings-checkout/meeting-with-annette/book

This email and any attachments are for the exclusive and confidential use of the intended recipient(s). If you receive this email in error, please notify us immediately by return email and promptly delete this message and its attachments from your system.

# EXHIBIT 4

**Atty. Scott W. Lang**

| | |
|---|---|
| **From:** | Annette Friesen <annette@aorhope.org> |
| **Sent:** | Tuesday, May 21, 2024 5:06 PM |
| **To:** | Atty. Scott W. Lang |
| **Cc:** | Milt Habeck |
| **Subject:** | Re: ICC Case #240330A - Update on Mailing |

Thank you Scott. I appreciate the prompt response.

As I mentioned in my email you can continue with this position through the new extended deadline date of May 30th, and if you file anything, please let me know as we can put the case on hold till a decision. But, even if you don't give me the address of Design Mark Industries and no claim has been filed, Milt will probably proceed under ICC Rule 37 (attached the ICC Rules). Whether the claim he makes is a legitimate can be one of the issues you bring before an Arbitrator (See ICC Rule 29). Also, the cost of the process can also be an issue to be decided.

If I do not hear from you by May 30th, I will again confirm with you your position before we move forward.

Sincerely,
Annette


Annette Friesen
Certified Christian Conciliator
Case Administration
406-300-4560, ext. 1002
annette@aorhope.org
https://www.aorhope.org/bookings-checkout/meeting-with-annette/book



*This email and any attachments are for the exclusive and confidential use of the intended recipient(s). If you receive this email in error, please notify us immediately by return email and promptly delete this message and its attachments from your system.*



On May 21, 2024, at 2:58 PM, Atty. Scott W. Lang <swlang@lxblaw.com> wrote:

Annette,

I don't believe this is a valid claim in any way.  I respect the work that you do but there needs to be a valid claim to proceed to Mediation or Arbitration.  There is not one in this case.  Milt has presented a bill to my client for over $300,000, all but $360.00 of which is interest and penalties.  We have made an offer to Milt of 10x the amount of $360.00 i.e. approximately $3,600.  My client is not willing to offer any additional money and finds this entire matter to be a scam.  Best, Scott

Attorney Scott W. Lang
Lang, Xifaras & Bullard
115 Orchard Street

1

New Bedford, MA 02740
Tel. 508-992-1270
Fax 508-993-8696
E-mail: swlang@lxblaw.com
This electronic mail transmission contains information from the Law Offices of Lang, Xifaras &
Bullard which is confidential and/or privileged. This information is intended for the use of the
addressee only. Please note that any disclosure, printing, photocopying, distribution or use of the
contents or attachments of this e-mailed information by persons other than the addressee or an
agent of the addressee is prohibited. If you have received this electronic mail in error, please
notify us via electronic mail reply to the sender immediately.

---

**From:** Annette Friesen <annette@aorhope.org>
**Sent:** Tuesday, May 21, 2024 4:27 PM
**To:** Atty. Scott W. Lang <swlang@lxblaw.com>
**Cc:** Milt Habeck <mhabeck@unpath.com>
**Subject:** ICC Case #240330A - Update on Mailing
**Importance:** High

Dear Scott,

As you know, Unbeaten Path initiated a case of Arbitration with Design Mark Industries with the ICC. On
May 2nd a letter was sent with documentation by email and sent by Certified mail to Design Mark
Industries (address supplied by Unbeaten Path) and you as counsel. The ICC has USPS proof of delivery
to you Scott, but not not to Mr. Renaud Megan, Design Mark Industries. In fact, today we received the
mailing returned to us with "Unable to Forward."

In light of ICC Rule 25 where we need "Proof of Notification to other parties of the filing of Arbitration" I
am respectfully requesting a correct address to re-send this mailing to your client.  Receipt of this
mailing by your client does not mean your decision (so far) not to engage in the process has changed, it
simply allows us to be faithful to the ensure your client receives this communication.

 **If we do not receive an updated address in order to resend the communication, we will deem that the
client has been notified via you as their counsel.  Due to this delay, the ICC extends the deadline for
your response by 7 days, from May 23 to May 30th.**

Please let me know if you have any questions.

Sincerely,
Annette


Annette Friesen
Certified Christian Conciliator
Case Administration
406-300-4560, ext. 1002
annette@aorhope.org
https://www.aorhope.org/bookings-checkout/meeting-with-annette/book



Ambassadors
*of*
Reconciliation

This email and any attachments are for the exclusive and confidential use of the intended recipient(s). If you receive this email in error, please notify us immediately by return email and promptly delete this message and its attachments from your system.

# EXHIBIT 5

## Anastasia Kondrasov

| | |
|---|---|
| **From:** | Annette Friesen <annette@aorhope.org> |
| **Sent:** | Friday, July 19, 2024 7:20 PM |
| **To:** | Anastasia Kondrasov |
| **Cc:** | mhabeck@unpath.com; Atty. Scott W. Lang |
| **Subject:** | Re: Design Mark Industries, LLC v. Unbeaten Path International, Ltd. and Milton C. Habeck Civil Action No. 1:24-CV-11850 |
| **Attachments:** | 240330A - 7.18.24 Prelim Order.pdf; Filed Complaint_Design Mark - Copy.pdf; Proof of Filing_Design Mark.pdf |

Dear Anastasia (and Scott),

I have notified the Arbitrator of this action and will ensure he sees these documents.

The Arbitrator has stated the Preliminary Hearing scheduled for next week (per the attached order) will happen, but he is requesting Attorney Scott Lang to attend and be present for the hearing (Zoom Link is in the Order).

Let me know if you have any questions.

Annette

Annette Friesen
Certified Christian Conciliator
Case Administration
406-300-4560, ext. 1002
annette@aorhope.org
https://www.aorhope.org/bookings-checkout/meeting-with-annette/book



Ambassadors
of
Reconciliation

This email and any attachments are for the exclusive and confidential use of the intended recipient(s). If you receive this email in error, please notify us immediately by return email and promptly delete this message and its attachments from your system.

1

On Jul 19, 2024, at 12:10 PM, Anastasia Kondrasov <akondrasov@lxblaw.com> wrote:

Good afternoon,

Please find attached to this email a copy of Design Mark's complaint filed in Federal Court on July 18, 2024, as well as a confirmation email of the filing. We expect that everyone will be subject to discovery. We look forward to working with you.

Best wishes,
Attorney Anastasia Kondrasov
Lang, Xifaras & Bullard
115 Orchard Street
New Bedford, MA 02740
phone: (508)992-1270
fax: (508)993-8696
email: akondrasov@lxblaw.com

This electronic mail transmission contains information from the Law Offices of Lang, Xifaras & Bullard which is confidential and/or privileged. This information is intended for the use of the addressee only. Please note that any disclosure, printing, photocopying, distribution or use of the contents or attachments of this e-mailed information by persons other than the addressee or an agent of the addressee is prohibited. If you have received this electronic mail in error, please notify us via electronic mail reply to the sender immediately.
PRIVILEGE AND CONFIDENTIALITY NOTICE The information contained in this email and any attachments may be legally privileged and confidential. If you are not an intended recipient, you are hereby notified that any dissemination, distribution or copying of this email is strictly prohibited. If you have received this email in error, please notify the sender and permanently delete the email and any attachments immediately. You should not retain, copy or use this email or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.

# EXHIBIT 6

1
2
3
4
5

Annette Friesen
Case Administrator
Institute for Christian Conciliation
P.O. Box 81662
Billings, MT 59108
844/447-2671

6
7
8
9

10          BEFORE THE INSTITUTE FOR CHRISTIAN CONCILIATION

11

12    UNBEATEN PATH INTERNATIONAL,          | Case No.: ICC240330A

13          Claimant,

14    DESIGN MARK INDUSTRIES,                | ARBITRATOR: Cort Thomas

15

16          Respondent                       | FROM ICC ADMINISTRATOR -
                                              | SUMMARY OF PRELIMINARY NOTICE
17                                            | AND COMMUNICATION DOCUMENTS
                                              | TO PARTIES
18

19

20          **I.     ORIGINAL REQUEST – EXHIBIT A**

21          On March 30th, the ICC received an email from Unbeaten Path International's (UPI)

22    owner Milton Habeck requesting the initiation of Arbitration with Design Mark Industries

23    (DMI).

24          **II.    REQUEST FOR ARBITRATION MAILING – EXHIBIT B**

25          On May 2, 2024, an email was sent to both Renaud Megard, CEO of Design Mark

26    Industries along with attorney Scott W. Lang, containing the Letter requesting Arbitration per

27

28    FROM ICC ADMINISTRATOR - SUMMARY OF PRELIMINARY NOTICE AND COMMUNICATION
      DOCUMENTS TO PARTIES - 1

ICC Rule 25, by UPI. The same documents were sent Certified Mail to both Attorney Lang and

CEO Megard. The package to attorney Lang was received, the package sent to CEO DMI was

returned. On May 3, I receive my first communication from Atty. Scott Lang letting me know

that DMI would not be participating.

When the package to CEO Megard was returned, I notified Atty. Lange via email on May

21, 2024 requesting a correct address for DMI. I did not receive a response. I noted in the email

(in bold) that if we did not receive a corrected address, we would deem that the client was

notified via their counsel.

### III.    COMMUNICATION FROM DMI TO ICC – EXHIBIT C

The ICC received its first communication directly from Atty. Scott Lang on

April 3, 2024. Mr. Lang repeatedly stated that Design Mark would not be participating in the

Mediation/Arbitration process and DMI did not recognize the authority of the ICC. On May 31,

2024, Mr. Lang requested copies of documents that address arbitration. The ICC responded on

the same day pointing out Item 13 of the Design Mark-Lickety Split SLA, and that it speaks to

the process of Mediation and Arbitration. As of May 3, 2024, the ICC has copied Mr. Lang on all

emails related to this case.

### IV.    NOTIFICATION OF PENDING LAWSUIT – EXHIBIT D

As early as the first email to the ICC, Atty Lang pointed out that he was planning to file

a lawsuit in Federal Court. On June 11, 2024, the ICC stated in an email to Mr. Lang that given

his meeting with his client, the ICC requested Mr. Habeck to NOT contact him until he had

conferred with his client. Also, the ICC Stated that while Arbitration would not commence until

June 30th, if Mr. Lang could "*show documentation that your client is pursuing action before that*

FROM ICC ADMINISTRATOR - SUMMARY OF PRELIMINARY NOTICE AND COMMUNICATION
DOCUMENTS TO PARTIES - 2

*date*" then the ICC would confer with legal counsel and consider putting the case on hold. Additionally, the ICC stated, "*Any request made after June 30th would be decided by the Arbitrator.*"

## V.   ARBITRATION COMMENCED – EXHIBIT E

On July 1, 2024, upon receipt of the signed Arbitration Agreement and retainer payment from UPI, the ICC emailed UPI and Atty Lang for DMI that the Arbitration had commenced. At the time of commencement there had been no notification or documentation of a lawsuit being filed.

## VI.   NOTIFICATION OF PRELIMINARY HEARING – EXHIBIT F

On July 18th Order No. 1 Notice of Preliminary Hearing was sent by email to UPI an Atty Scott Lang for DMI. Embedded in the email was a Zoom link for the Hearing. On July 19th, the ICC received an email from Mr. Lang in response to an email with Mr. Habeck (copied to Mr. Lang) regarding the camera use for the hearing. The email stated, "Case filed in federal court yesterday." The ICC responded with a request for documentation. A copy of the Lawsuit and notification of service was then sent to the ICC by email from Anastasia Kondrasov, Attorney in Mr. Lang's office.

DATED: July 23, 2024                Annette Friesen, ICC Case Administrator