UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DESIGN MARK INDUSTRIES, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 1:24-cv-11850-IT |
| UNBEATEN PATH INTERNATIONAL, | * | |
| LTD. and MILTON C. HABECK, | * | |
| | * | |
| Defendants. | | |

MEMORANDUM & ORDER

March 26, 2025

TALWANI, D.J.

In this action, Plaintiff Design Mark Industries, LLC ("Design Mark") alleges unfair and deceptive trade practices in violation of M.G.L. c. 93A and fraud and deceit by Defendants Unbeaten Path International, Ltd. ("Unbeaten Path") and Milton C. Habeck. Design Mark claims further that terms of certain contracts between Design Mark and Unbeaten Path are unconscionable. Design Mark seeks damages and a declaratory judgment that certain provisions of those contracts are void and unenforceable. Compl. [Doc. No. 1]. Now pending before the court are Plaintiff's Motion for Preliminary Injunction [Doc. No. 8] seeking to enjoin Unbeaten Path from arbitrating a dispute regarding fees and penalties that Unbeaten Path contends are due and Defendants' Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) or, in the Alternative, to Compel Arbitration [Doc. No. 29]. For the following reasons, Defendants' Motion [Doc. No. 29] is DENIED as to the request to dismiss the action for lack of subject matter jurisdiction and GRANTED as to the request to compel arbitration of Plaintiff's claims, and Plaintiff's Motion [Doc. No. 8] seeking preliminary relief is DENIED.

I.    **Background**

A.  *Facts Alleged in the Complaint*

Design Mark is a Massachusetts LLC that manufactures custom electronics. Compl. ¶ 7 [Doc. No. 1]. Unbeaten Path is a Wisconsin IT services and consulting company. Id. at ¶ 8. Defendant Milton Habeck, a resident of Wisconsin, is Unbeaten Path's President and managing partner. Id. at ¶ 9. Craig Ingemi is Design Mark's Director of Information Technology. Id. at ¶ 13.

On December 19, 2019, Ingemi signed a software licensing agreement ("SLA") on behalf of Design Mark and Habeck signed the SLA on behalf of Unbeaten Path. Id. at ¶¶ 18–19. In 2021, Ingemi and Habeck began discussions regarding the use of Unbeaten Path's IT services and programs. Id. at ¶ 25. Habeck sent Ingemi an Engagement Agreement ("EA") and a Professional Service Agreement ("PSA"). Id. at ¶¶ 26–28. Ingemni asked Habeck which of these two agreements was necessary to establish an agreement for "support only when needed," and Habeck responded that both agreements were necessary. Id. at ¶ 29. Ingemi signed both documents for Design Mark on April 1, 2021. Compl. Ex. C [Doc. No. 1-5]; Compl. Ex. D [Doc. No. 1-6].

On July 8, 2021, Ingemi emailed Habeck a question regarding the software licensed under the SLA. Compl. ¶ 42 [Doc. No. 1]; Compl. Ex. G [Doc. No. 1-9]. On or about July 14, 2021, Habeck sent an invoice for $307.25 for reviewing and answering questions related to Ingemi's July 8 email. Id. at ¶¶ 43–44; Compl. Ex. I [Doc. No. 1-12]. Ingemi disputed the charge as unreasonable but forwarded the invoice to Design Mark's accounting staff for payment in full. Compl. ¶ 44 [Doc. No. 1]. However, Design Mark's accounting team lost track of the invoice. Id.

On or about October 20, 2021, Habeck sent an invoice for $10.45 as a penalty for nonpayment of the July 14 invoice. Id. at ¶ 45. The penalty invoice was due on November 19, 2021, but paid on November 23, 2021. Id. at ¶¶ 45, 47. Habeck recorded the payment as received on December 6, 2021.

Habeck also invoiced Design Mark $2,610 for "Software Maintenance" on January 3, 2022. Id. at ¶ 48. Design Mark paid this invoice on March 3, 2022, despite never receiving these services. Id.

Design Mark discovered the unpaid July 14, 2021 invoice and paid it on April 21, 2022. Id. at ¶ 49. Habeck recorded that payment as received on April 26, 2022. Id.

 Habeck invoiced Design Mark for compounded $750 Payment Negligence Penalty ("PNP") fees based on the two original invoices. Id. at ¶ 50. Habeck also continued to invoice Design Mark for PNP and penalty interest fees based on penalties that Design Mark had not paid. Id. at ¶ 51.

On December 7, 2022, Habeck sent another invoice with a spreadsheet that acknowledged Design Mark's payment in full for the two invoices originally at issue. Id. at ¶ 54; Compl. Ex. P [Doc. No. 1-19]. The billing, including accelerated penalty fees, continued through Design Mark's filing of this action. Compl. ¶¶ 55, 57 [Doc. No. 1].

On March 7, 2024, Habeck acknowledged in an email that, according to his records, the amount Design Mark owed under the SLA was $3,219, and that the remaining invoices, which exceeded $400,000, were for penalty fees that were being compounded. Id. at ¶ 65; Compl. Ex. U [Doc. No. 1-24].

At the time the Complaint was filed, Defendants claimed that Design Mark owed fees totaling $412,443.21. Compl. Ex. Q [Doc. No. 1-20].

B.  *The Contracts at Issue*

The SLA includes a provision prescribing mediation and arbitration as "the sole remedy for any controversy/claim arising out of this SLA" and explaining that such proceedings would be conducted by the Institute of Christian Conciliation under the "Rules of Procedure for Christian Conciliation." Compl. Ex. A [Doc. No. 1-3].

The EA states that it was a "subsidiary to the Professional Services Agreement." Compl. Ex. C [Doc. No. 1-5]. The PSA set forth the terms and conditions under which Unbeaten Path would provide deliverables to Design Mark. Compl. Ex. D [Doc. No. 1-6]. In particular, the PSA stated that payments not made within thirty days after the invoice date would be overdue and "subject to a finance charge of 1.5% per month." Id. Further, any payment received more than 61 calendar days after its due date would be subject to a $750 "Payment Negligence Penalty." Id.

The PSA also included a provision for "resolving issues" which provides:

> Any and all claims/disputes related in any way to this PSA shall be mediated under the "Rules of Procedure for Christian Conciliation" . . . . Any controversy which cannot be settled by such mediation will be settled by arbitration in accordance with Institute of Christian Conciliation (ICC) Rules. Arbitration decisions reached under these Rules shall be considered final and not subject to appeal. The ICC shall nominate mediators and/or arbitrators. The parties agree that the mediation/arbitration methods described by the ICC Rules shall be the sole remedy for any controversy/claim arising out of this PSA. Each party expressly waives its right to file/introduce any motion or action against the other party in any civil court or any other civil jurisdiction for any reason, and promises not to do so, except to enforce an arbitration decision. The party that first breaches the promise in the preceding sentence will pay the other party a penalty of US$55,000; motions for dismissal of civil cases will not be viewed as a breach of this PSA. The prevailing party in any ICC arbitration case shall be entitled to collect these case-associated amounts from the other party: i) attorney fees, ii) out-of-pocket costs/travel expenses, iii) a US$10,000 penalty for employee time devoted to preparing filing(s) and attending hearing(s), plus iv) 1.5% per month interest on awarded values. This PSA and any related EAs shall be governed solely and exclusively by the principles written in the Holy Bible.

Id.

4

C. *The Filing of this Action and Further Developments*

Design Mark filed this action on July 18, 2024. Compl. [Doc. No. 1]. On July 23, 2024, an ICC case administrator issued a "summary of preliminary notice and communication documents" stating that Habeck had requested to initiate arbitration with Design Mark on March 30, 2024, and that Design Mark had notified the ICC that it would not be participating in the mediation and arbitration process. Mot. for Preliminary Injunction Ex. 6 CM/ECF pp. 49–51 [Doc. No. 8-1]. Two days later, on July 25, 2024, Design Mark filed the pending Motion for Preliminary Injunction [Doc. No. 8] seeking to enjoin Unbeaten Path from arbitrating Design Mark's claims.[1]

On August 14, 2024, the court granted the parties' request for a stay pending settlement discussions. Elec. Order [Doc. No. 17]; see Mot. for Stay [Doc. No. 16]. On September 9, 2024, Unbeaten Path sent revised invoices granting credits that reduced Design Mark's amount due under the PSA by 99% to $1,248.14 and the amount due under the SLA by 92% to $18,083.52. See Mot. for Preliminary Injunction Ex. 9 CM/ECF pp. 8, 10 [Doc. No. 21-1]. The revised invoices each stated that "[t]his concession is presented without any required reciprocal consideration. . . . It's a permanent, no-strings attached credit. It had been [Unbeaten Path's] intent to offer this in ICC mediation discussions, but we never got the chance to do that." Id. at CM/ECF pp. 7, 9.

Also on September 9, 2024, the arbitrator issued an order in the arbitration proceedings stating that arbitration would not proceed until this court ruled on Design Mark's request for

---

[1] Although Design Mark filed the motion on an emergency basis, the following day Design Mark sought a continuance as requested by Defendants, see Mot. [Doc. No. 11], which this court granted, see Elec. Order [Doc. No. 12].

injunctive relief and the arbitrability of its claims. See Mot. for Preliminary Injunction Ex. 10 3–4 [Doc. No. 21-2].

On October 23, 2024, Unbeaten Path filed the pending Motion to Dismiss or Compel Arbitration [Doc. No. 29].

**II.    Motion to Dismiss Based on Lack of Subject Matter Jurisdiction**

Design Mark asserts that this court has subject matter jurisdiction based on diversity of citizenship and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Compl. ¶¶ 2–3 [Doc. No. 1]. Defendants contend that Design Mark has failed to establish subject matter jurisdiction. Mem. ISO Mot. to Dismiss or Compel Arbitration 1–3 [Doc. No. 30]. As explained below, the court finds that it has subject matter jurisdiction based on diversity of citizenship.

A.  *Legal Standard*

Rule 12(b)(1) is the "proper vehicle for challenging a court's subject matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). A challenge to the court's subject matter jurisdiction must generally be addressed before addressing the merits of a case. See Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case").

Diversity jurisdiction requires that the case arise between "citizens of different States" and have an amount in controversy that exceeds $75,000. 28 U.S.C. § 1332(a)(1). "When a statute includes a jurisdictional-amount requirement, the district court must determine whether the matter in controversy stated in the complaint exceeds the prescribed amount before it proceeds." 14B Fed. Prac. & Proc. Juris. § 3702 (5th ed.). "[T]he amount in controversy is

determined by looking to the circumstances at the time the complaint is filed." Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995). "[I]f jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991).

"The party invoking diversity jurisdiction bears the burden of establishing that the amount-in-controversy requirement is satisfied." Andersen v. Vagaro, Inc., 57 F.4th 11, 14 (1st Cir. 2023). "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Id. at 14–15 (alteration in original) (quoting Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004)). "[W]hen challenged, the plaintiff 'has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount.'" Id. at 15 (quoting Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991)). "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977).

Determining the amount in controversy for purposes of subject-matter jurisdiction should "be done quickly, without an extensive fact-finding inquiry." Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). Courts provide plaintiffs "the benefit of the doubt" and will determine that the amount in controversy requirement is met unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." See Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955, 957 (7th Cir. 1998) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). If challenged, "the party seeking to invoke jurisdiction has the burden

of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004) (quoting Spielman, 251 F.3d at 5).

    B.    *Discussion*

As an initial matter, the parties here are diverse. Unbeaten Path is a Wisconsin corporation with its principal place of business in Racine, Wisconsin, and Milton Habeck is also a citizen of Wisconsin. See Defendants' Corporate Disclosure Statement [Doc. No. 38]. Design Mark's members are citizens of Massachusetts and Switzerland. See Design Mark's Corporate Disclosure Statement [Doc. No. 36].

The amount in controversy exceeds $75,000. Plaintiff's Complaint, filed on July 18, 2024, demanded $255,000 in damages as well as additional relief. Compl. p. 15 [Doc. No. 1]. Defendants argue first that Design Mark has failed to satisfy the amount-in-controversy requirement because it did not support its demand with specific facts or calculations. Mem. ISO Mot. to Dismiss or Compel Arbitration 2 [Doc. No. 30]. But Design Mark alleges in a verified Complaint that Defendants were demanding more than $400,000 from Design Mark when the Complaint was filed. Compl. ¶¶ 55–56 [Doc. No. 1]. Further, that allegation is supported by a July 1, 2024 email from Habeck claiming that Design Mark owed Unbeaten Path $412,443.21, with attached invoices and line-item reports of the charges that Unbeaten Path had imposed. Compl. Ex. Q [Doc. No. 20]. Where Unbeaten Path was seeking more than $400,000 in penalties and fees under contracts between Design Mark and Unbeaten Path when Design Mark filed this action, which challenges those same contracts and Defendants' business practices leading to those penalties and fees, Design Mark has established that the "object of the litigation" exceeds $75,000. See Hunt, 432 U.S. at 347.

8

Defendants argue next that the court lacks subject matter jurisdiction because Unbeaten

Path reduced Design Mark's outstanding invoices below $20,000. Mem. ISO Mot. to Dismiss or

Compel Arbitration 2–3 [Doc. No. 30]. That Unbeaten Path reduced its demand below $75,000

after this litigation was filed does not deprive this court of subject matter jurisdiction. See

Freeport-McMoRan, 498 U.S. at 428.[2]

### III.    Motion for Preliminary Injunction

A. *Legal Standard*

The issuance of a preliminary injunction before a trial on the merits can be held is an

"extraordinary remedy" that shall enter only if a plaintiff makes a clear showing of entitlement to

such relief. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). In evaluating a motion

for a preliminary injunction, the court considers four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to
> the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e.,
> the hardship to the nonmovant if enjoined as contrasted with the hardship to the
> movant if no injunction issues; and (4) the effect (if any) of the court's ruling on
> the public interest.

Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 17–18 (1st Cir. 2006) (quoting Bl(a)ck

Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004)). The first factor is the most

important: if the moving party cannot demonstrate a likelihood of success on the merits, "the

remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v.

SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). "To demonstrate likelihood of success on the

merits, plaintiffs must show 'more than mere possibility' of success—rather, they must establish

---

[2] Because the court has diversity jurisdiction, the court need not address Defendants' contention
that Design Mark has not established federal question jurisdiction under 28 U.S.C. § 1331. See
Mem. ISO Mot. to Dismiss or Compel Arbitration 3–4 [Doc. No. 30].

a 'strong likelihood' that they will ultimately prevail." <u>Sindicato Puertorriqueño de Trabajadores v. Fortuño</u>, 699 F.3d 1, 10 (1st Cir. 2012) (quoting <u>Respect Maine PAC v. McKee</u>, 622 F.3d 13, 15 (1st Cir. 2010)).

  B. *Discussion*

  Here, Design Mark has shown a substantial likelihood of success as to its claims that Defendants' billing practices under its contracts with Design Mark constitute unfair business practices in violation of M.G.L. c. 93A. Where the verified complaint and attached documentation show that Unbeaten Path imposed the significant majority of the fees it was demanding under penalty and interest provisions, Design Mark has made a substantial showing that it is likely to succeed in establishing that the penalty and interest provisions and Defendants' billing scheme violate Massachusetts law. <u>See</u> <u>Mack v. Cultural Care Inc.</u>, 2020 WL 4673522, at *9 (D. Mass. Aug. 12, 2020) ("Billing practices that inflate the actual price of a product or service without adding additional value are unfair or deceptive under Chapter 93A.") (collecting cases). And Defendants have offered no defense of the fee and penalty terms that Design Mark alleges are unfair.[3] To the contrary, Defendants have now unilaterally reduced its demand by over 90%, stating that it was always their intent to do so during mediation. <u>See</u> Mot. for Preliminary Injunction Ex. 9 CM/ECF pp. 7, 9 [Doc. No. 21-1].

  However, Design Mark has not shown it will suffer irreparable harm if these claims are arbitrated. The SLA and PSA state that the agreements between the parties "shall be governed solely and exclusively by the principles written in the Holy Bible." Compl. Ex. A [Doc. 1-3];

---

[3] Plaintiff has not demonstrated a likelihood of success on its claim that the arbitration provisions are unconscionable, and to contrary, as set forth below, the court finds the case arbitrable.

Compl. Ex. D [Doc. No. 1-6]. However, the ICC Rules that govern arbitration proceedings

provide that the arbitrator "shall consider any state, federal or local laws that the parties bring to

their attention" and that incorporation of the Bible as "the supreme authority governing the

conciliation . . . is not intended to prevent the assertion of any claims or defenses permissible

under state, federal, or local laws." ICC Rules of Procedure for Christian Conciliation, Institute

for Christian Conciliation, https://www.aorhope.org/icc-rules (last visited March 23, 2025); see

also Mot. for Preliminary Injunction Ex. 8 [Doc. No. 14-2] (arbitration order applying federal

law regarding arbitrator's jurisdiction to determine arbitrability). And in light of Defendants'

motion to compel arbitration of the claims that Design Mark asserts here, the court sees no

reason why Plaintiff will not be able to raise these state law claims as defenses in an arbitration

proceeding concerning Unbeaten Path's claim for fees.

Accordingly, Design Mark's request for a preliminary injunction enjoining arbitration is

denied.

### IV.    Motion to Compel Arbitration

Defendants argue that if this case is not dismissed, the SLA and PSA require arbitration

of Design Mark's claims, and the court should compel arbitration pursuant to the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 2. Mem. ISO Mot. to Dismiss or Compel Arbitration 4–6

[Doc. No 30]. Design Mark argues that the arbitration agreements are invalid and that Ingemi

lacked authority to agree to arbitration under the PSA on Design Mark's behalf.

A.  *Legal Standard*

A party who attempts to compel arbitration must show "that a valid agreement to arbitrate

exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by

that clause, and that the claim asserted comes within the clause's scope." Soto-Fonalledas v.

Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir.2011)).

Courts apply the summary judgment standard in evaluating motions to compel arbitration under the FAA. Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021). Pursuant to the summary judgment standard, courts may consider "evidentiary materials . . . beyond those attached to the pleadings" submitted in support of and opposition to the motion to compel. Id. In doing so, courts construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Id.

    B.  *Discussion*

        1.    The Arbitration Agreements in the PSA and SLA are Valid.

The FAA establishes that "[a] written provision in . . . a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. State contract law controls the determination of whether an arbitration agreement is valid. See Soto-Fonalledas, 640 F.3d at 475. Consequently, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). A challenge to the validity of an entire contract containing an arbitration clause is distinct from a challenge to the arbitration clause itself. Nat'l Fed'n of the Blind v. The Container Store, Inc., 904 F.3d 70, 81 (1st Cir. 2018). "A challenge to the validity of an entire contract containing an arbitration provision must go to an arbitrator." Id. (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402–04 (1967)). "Meanwhile, a challenge to the validity of the arbitration

provision itself must be decided by the court." Id. (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443–45 (2006)).

Consequently, "an arbitration provision is severable from the remainder of the contract." Buckeye Check Cashing, 546 U.S. at 445 (2006). Therefore, in deciding whether to enforce an arbitration agreement, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." Prima Paint, 388 U.S. at 404.

Design Mark first argues that the arbitration clauses are invalid because they are unconscionable. Opp'n 8–9 [Doc. No. 34].[4] "The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect." Machado v. System4 LLC, 471 Mass. 204, 218, 28 N.E.3d 401 (2015) (quoting Miller v. Cotter, 448 Mass. 671, 679, 863 N.E.2d 537 (2007). "[T]o prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise)." Id. (quoting Storie vs. Household Int'l, Inc., 2005 WL 3728718, at *9 (D. Mass. Sept. 22, 2005)).

Design Mark has not established procedural unconscionability because the circumstances here do not indicate unfair surprise. Design Mark claims that Defendants did not disclose the arbitration clauses to Design Mark. Opp'n 9 [Doc. No. 34]. However, the arbitration clauses appear conspicuous within the agreements and are not "'obscurely worded' or 'buried in fine

---

[4] Design Mark also argues that the other provisions of the contract and the contract as a whole are unconscionable. "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Rent-A-Ctr., 561 U.S. at 70 (2010).

print.'" See Skirchak v. Dynamics Research Corp., 508 F.3d 49, 60 (1st Cir. 2007) (quoting

Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 294, 408 N.E.2d 1370 (1980)). The SLA's

arbitration provision is in a section bold-titled "Mediation/arbitration/governing law," and

explains that disputes and claims arising under the SLA will be resolved through the ICC in

accordance with ICC rules. Compl. Ex. A [Doc. No. 1-3]. Similarly, the PSA's arbitration clause

is labeled "RESOLVING ISSUES," and it explains that disputes are subject to resolution through

the ICC using ICC rules. Compl. Ex. D 2 [Doc. No. 1-6]. Additionally, the PSA is a single page.

Compare Skirchak, 508 F.3d at 60–61 (finding lack of fair notice where provision was "hidden

in two paragraphs in a multi-page appendix to a fifteen-page document"). Any "failure to read or

understand" these provisions "does not free [Design Mark] from its obligations." See Miller, 448

Mass. at 680.

Design Mark asserts that the arbitration clauses are oppressive because the procedures

"weigh in favor of the Defendants," who have used the ICC in arbitrations "against customers

many times." Opp'n 10 [Doc. No. 34]. However, Design Mark has not established that the

arbitration clauses are procedurally unconscionable, which means it cannot establish that the

terms are invalid on unconscionability grounds. See Machado, 471 Mass. at 218 (requiring

plaintiff to prove both procedural and substantive unconscionability).

Design Mark also argues that the arbitration clauses are invalid because Design Mark's

agreement to them was induced by Defendants' failure to disclose that they had used the ICC for

dispute resolution in the past. See Mem. ISO Mot. for Preliminary Injunction 11 [Doc. No. 8-1].

Design Mark asserts that Defendants "committed fraud/deceit . . . in regard to the agreements

and by initiating arbitration through the ICC." Opp'n 13 [Doc. No. 34]. Specifically, Design

Mark argues that Defendants did not disclose "the ICC's favoritism towards the Defendants and

Defendants' history with the ICC" and claims that Defendants drafted the agreements to include

ICC arbitration "knowing it was not an impartial arbitration process . . . ." See id. (referring to

fraud arguments in Memorandum in Support of Motion for Preliminary Injunction [Doc. No. 8-

1]); Mem. ISO Mot. for Preliminary Injunction 11 [Doc. No. 8-1].

A claim of fraud sufficient to invalidate an agreement must allege a misrepresentation or

concealment of material information that the defendant had a duty to disclose. Buffalo-Water 1,

LLC v. Fid. Real Estate Co., LLC, 481 Mass. 13, 25, 111 N.E.3d 266 (2018). A duty to disclose

exists when "(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are

matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous

statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to

the essence of, the transaction." Stolzoff v. Waste Sys. Int'l, Inc., 58 Mass. App. Ct. 747, 763,

792 N.E.2d 1031 (2003).

Design Mark has not alleged an affirmative misrepresentation regarding the nature of the

arbitration clauses. The only alleged misrepresentation is Habeck's statement that both the EA

and PSA were necessary to establish a support-as-needed agreement with Unbeaten Path. Compl.

¶ 29 [Doc. No. 1]. This statement does not concern dispute resolution proceedings under the

agreements.

Design Mark has also not alleged circumstances that gave rise to a duty for Defendants to

disclose their history with the ICC. First, Design Mark has not alleged a fiduciary relationship

with Defendants. Instead, "when parties bargain, each tries to get the best from the trade. They

are in an adversary, not a fiduciary, relationship." Schwanbeck v. Fed.-Mogul Corp., 31 Mass.

App. Ct. 390, 405, 578 N.E.2d 789 (1991), rev'd on other grounds, 412 Mass. 703, 592 N.E.2d

1289 (1992). Second, Design Mark has not alleged any ambiguous or partial statement by

Defendants about the dispute resolution clauses during negotiations. And "[i]n a business context when sophisticated parties have reduced their understandings to writing, they cannot be heard to allege that . . . they didn't understand what they were doing." Davidson v. Gen. Motors Corp., 57 Mass. App. Ct. 637, 644, 786 N.E.2d 845 (2003). Third, Design Mark's allegations indicate that the purpose of the commercial relationship between the parties was for Design Mark to obtain software and consulting services from Unbeaten Path that would help Design Mark improve its efficiency. See, e.g., Compl. ¶¶ 17–19, 21–25 [Doc. No. 1]. Whether Defendants had utilized the ICC to resolve disputes with other clients is not "part of the substance of what [Design Mark] bargained for," and is thus not a fact "basic to the transaction." Restatement (Second) of Torts § 551 cmt. j (Am. L. Inst. 1977). In sum, Design Mark has not alleged a misrepresentation or non-disclosure that supports a claim that the arbitration clauses were fraudulently induced.

> 2.    Unbeaten Path is Entitled to Invoke the Arbitration Clause.

The agreements do not limit which parties may invoke the arbitration clauses. Unbeaten Path is a party to both agreements and therefore clearly may invoke the clauses. While it is not as obvious that Habeck may invoke the clauses, Design Mark has raised no objections in this regard.

> 3.    Design Mark is Bound to the Arbitration Agreements.

Design Mark alleges that Ingemi lacked authority to agree to the PSA on Design Mark's behalf because Ingemi did not have authority to enter into complex agreements. Compl. ¶¶ 30, 124 [Doc. No. 1].

"It is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010). A claim that a signatory to an arbitration agreement did not have authority to

commit the principal constitutes a challenge to formation. <u>Nat'l Fed'n of the Blind</u>, 904 F.3d at 81.

The record contradicts Design Mark's assertion that Ingemi lacked authority to agree to the PSA. Here, Ingemi signed the SLA on Design Mark's behalf, Compl. Ex. A [Doc. No. 1-3], and Design Mark does not appear to contest his authority to enter into that agreement. And the arbitration provision in the PSA is nearly identical to the SLA's arbitration provision. <u>See</u> Compl. Ex. A [Doc. No. 1-3]; Compl. Ex. D [Doc. No. 1-6]. Further, the PSA lists Design Mark as a party, Ingemi signed the PSA for Design Mark, and the PSA provides that the signatories "agree to be bound by [its] terms, and affirm that they are duly authorized to execute this PSA on behalf of their enterprise." Compl. Ex. D [Doc. No. 1-6]. Finally, Ingemi told Habeck that Habeck "needed to work directly through IT," i.e. Ingemi, "for software agreements" and directed him to stop including other corporate officers in discussions regarding another software and services agreement. <u>See</u> Compl. Ex. F [Doc. No. 1-8]; Compl. ¶¶ 39–40 [Doc. No. 1]. The record thus precludes an inference that Ingemi lacked authority to agree to arbitration under the PSA on Design Mark's behalf.

4. The Arbitration Provisions Encompass Design Mark's Claims.

Whether the parties have agreed to submit a particular dispute to arbitration is an "issue for judicial determination." <u>Granite Rock Co.</u>, 561 U.S. at 296 (quoting <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 83 (2002). Here, the parties have agreed to submit to arbitration "[a]ny and all claims/disputes arising from or related to this SLA" and "[a]ny and all claims/disputes related in any way to this PSA." Compl. Ex. A [Doc. No. 1-3]; Compl. Ex. D [Doc. No. 1-6].

Design Mark's state law challenges to Defendants' billing practices are related to and arise out of the agreements between the parties. Design Mark's claims under M.G.L. c. 93A allege that "[t]he Defendant's billing practices . . . were fraudulent and dishonest, and that such billing practices constituted unfair and deceptive trade practices in violation of Chapter 93A." Compl. ¶¶ 85, 99 [Doc. No. 1]. Design Mark's claims for "Fraud/Deceit" allege that Defendants "intentionally and unlawfully enforced a penalty fee billing scheme designed to disproportionately punish" Design Mark, that Design Mark "detrimentally relied on the Defendant's false statements of material fact and/or . . . failure to disclose certain material . . . facts and/or information regarding the EA, PSA, and SLA," and "manipulated the late penalty provisions of the PSA and SLA . . . ." Id. at ¶¶ 103–04, 107, 112–13, 116. Design Mark also claims that the PSA's PNP provision is oppressive and seeks a declaration that it is void and unenforceable. Id. at ¶¶ 121, 134. Where Design Mark challenges provisions in the contracts that contain the arbitration clauses and Defendants' billing practices under those contracts, the arbitration clauses encompass the claims that Design Mark has asserted here.

**V.    The Court Will Stay this Action Pending Arbitration**

Under the FAA, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration," the court shall stay the action pending arbitration of the claims "upon being satisfied that the issue . . . is referable to arbitration under such an agreement." 9 U.S.C. § 3; see also 9 U.S.C. § 4 (explaining court must "direct[] the parties to proceed to arbitration in accordance with the terms of the agreement" where court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue").

As explained above, Design Mark has failed to demonstrate that the arbitration clauses are invalid based on "grounds [that] exist at law or in equity for the revocation of any contract," 9 U.S.C § 2, and Design Mark is bound by the agreements to arbitrate. Therefore, this action is stayed pending arbitration of Design Mark's claims.

**VI.    Conclusion**

For the foregoing reasons, Defendants' <u>Motion to Dismiss or Compel Arbitration</u> [Doc. No. 29] is GRANTED in part and DENIED in part. Design Mark's <u>Motion for Preliminary Injunction</u> [Doc. No. 8] is DENIED. This action is stayed pending resolution of Design Mark's claims in accordance with the procedures set forth in the SLA and PSA.

IT IS SO ORDERED.

March 26, 2025                                        /s/Indira Talwani
                                                             United States District Judge